UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 24-CR-173 (4) (DSD/DLM) |
| | ) | |
| v.                  Plaintiff, | ) | **DEFENDANT'S POSITION REGARDING SENTENCING** |
| | ) | |
| ABDULKARIM SHAFII FARAH, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Defendant, Abdulkarim Shafii Farah, by and through his undersigned attorney, Kevin W. DeVore, submits this sentence position pursuant to Rule 83.10(e) of the Local Rules of the United States District Court for the District of Minnesota. Defendant respectfully requests the Court to sentence him to time already served in federal custody. Such a sentence is sufficient, but not greater than necessary, to satisfy the intended purpose of sentencing under the guidelines and the law.

## PROCEDURAL HISTORY

**A.    Indictment.**

On June 25, 2024, Mr. Farah was charged by Indictment, as follows:

Count 1: Conspiracy to Bribe a Juror from March 2024 through June 2024, in violation of 18 U.S.C. § 371;

Count 2: Bribery of a Juror on June 2, 204, in violation of 18 U.S.C. § 201; and

Count 3: Corruptly Influencing a Juror on June 2, 2024, in violation of 18 U.S.C. § 1503.

1

**B.      Plea Agreement.**

On April 2, 2025, Mr. Farah pled guilty to Count 2 of the Indictment pursuant to a written plea agreement.  Pursuant to the plea agreement, total offense level is at least 21 and up to 23, with a criminal history category of I and an advisory guideline term of 46 to 57.

## BACKGROUND

**A.      Incident**

Feeding Our Future

From April 22, 204 to Friday, May 31, 2024, multiple coconspirators (not including Mr. Farah) were on trial for various fraud and money laundering charges (the "Feeding Our Future" case).  (PSR 6.)  During the Feeding Our Future trial, Juror 52 was targeted for a bribe in exchange for her return of a not guilty verdict in said trial.  (PSR 7.)  During May 2024, at the direction of codefendant Abdimajid Nur, Mr. Farah conducted surveillance of Juror 52 and her residence and sent a map showing the location of the Jerry Haaf Memorial Parking Ramp in Minneapolis where Juror 52 parked during jury service.  (PSR 9.) Mr. Farah did not have education or experience with the judicial system, and he was not provided with details of why he was being asked to follow this person. Significantly, Mr. Farah had nothing to do with the Feeding Our Future trial and was never charged in that case.

On June 2, 2024, Mr. Farah was directed by coconspirator Nur to accompany coconspirator Ali to Juror 52's home and record the delivery of the bribe as proof that the bribe money was delivered and as proof of Juror 52's acceptance of the bribe.  (PSR 15.)

2

Later that evening, Mr. Farah sent the video of coconspirator Ali delivering the bribe to Juror 52's house.  (PSR 17.) Mr. Farah did not participate in the meetings or discussions surrounding the purpose or planning of the attempted bribe and he was given few details about the things he was asked to do. Essentially, Mr. Farah was an unwitting participant in this crime, which is reflected in the PSR recommendation for a minor role adjustment. (PSR 35.)

### B.    Acceptance of Responsibility

Mr. Farah was interviewed on April 10, 2025, by probation services, with his counsel present, and provided a statement during the interview accepting responsibility for the offense conviction.  (PSR 25.)

### C.    Growing Up

Mr. Farah was born in Minneapolis, Minnesota on November 1, 2000.  His parents never married, and his father returned to Kenya in 2010.  Mr. Farah's contact with his father has been rare since he left the United States.  (PSR 53.)  Mr. Farah has lived with his mother for his entire life.  She presently resides in Minneapolis at the same location as Farah's arrest.  *Id.*

Mr. Farah has a total of 11 siblings, but he has had little to no contact with 7 of those siblings.  He was raised in the same household as Jamal Moalidan, Abdiaziz Farah (not the codefendant in this case) and Abdiqadar Farah, who live with his mother in Minneapolis. He also has regular contact with his sister, Asha Farah, who resides in Bloomington, Minnesota.  Mr. Farah does not have close relationships with his other siblings because of significant age differences and/or family separations.  (PSR 54.)

Mr. Farah was raised in Minneapolis with a mostly unremarkable upbringing. His family has consistently lived in the same neighborhood in Minneapolis since his parents' immigration from Kenya in the 1990s. (PSR 55.) Mr. Farah spent most of his childhood focused on educational and religious activities with attendance at school on weekdays and dugsi at a mosque on weekends.

He rarely had time for any other extracurricular ventures beyond those studies. (PSR 56.) In 2010 his family returned to Kenya where he lived until his mother returned to Minnesota in 2014. His father stayed in Kenya. *Id.* Mr. Farah was academically successful and graduated from high school in 2019. (PSR 57.) After high school graduation, Mr. Farah was employed in various jobs while also enrolled in local college courses. In 2021 he accepted an employment offer from his brother, Abdiaziz Farah. *Id.* Mr. Farah had infrequent communication with his brother prior to the job offers that were extended to him and their association ultimately led to this instant offense conduct in 2024. *Id.*

## ARGUMENT

The Eighth Circuit has articulated a three-step sentencing procedure. *United States v. John H. Sitting Bear*, 436 F.3d 929, 934 (8th Cir. 2006). First, the Court is to determine the sentencing guideline range. *Id.* Second, the Court is to consider whether a departure is warranted under the guidelines. *Id.* Third, the Court should consider the factors enumerated in 18 U.S.C. § 3553(a) and determine the proper sentence based on the facts of the case. *Id.* In exercising its sentencing consideration, the Court is tasked with imposing "a

sufficient sentence, but not greater than necessary" to comply with 18 U.S.C. §3553(a)(2). In so doing, the Court is to consider the factors articulated in 18 U.S.C. §3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Barron*, 557 F.3d 866, 868 (8th Cir. 2009).

### A.    Parsimony Provisions and Factors

A thoughtful sentence requires the Court to thoroughly consider the Parsimony Provisions before imposing the sentence.  18 U.S.C. §3553(a). Such a sentence shall be sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553. *Id.* Such purposes the court shall consider include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and the kinds of sentences available. *Id.* Moreover, Section 3553(b) authorizes the Court to impose a sentence outside of the recommended guideline range if mitigating circumstances exist that were not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 18 U.S.C. §3553(b).

The Supreme Court in *Booker* held that the United States Sentencing Guidelines are advisory, and that District Courts must examine all the §3553(a) factors in order to impose a sentence "sufficient, but not greater than necessary" to accomplish the goals of

5

sentencing. *United States v. Booker*, 543 U.S. 220 (2005). The ensuing trio of 2007 Supreme Court cases made abundantly clear that District Courts must fashion individualized sentences based on the unique facts and circumstances of each case, and that the Guidelines emphatically do not enjoy a presumption of reasonableness. *See Gall v. United States*, 128 S.Ct. 586, 602 (2007) (probationary sentence substantially outside of Guidelines was reasonable and justified); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007)(sentencing courts may depart from Guidelines range based solely on policy considerations, including disagreements with Guidelines drug sentencing policies); *Rita v. United States*, 127, S.Ct. 2456, 2465 (2007)(sentencing courts may vary based on arguments that Guidelines sentencing range itself fails to comport with §3553(a) factors). The thrust of *Booker* and its progeny is "that the District Court is free to make its own reasonable application of the §3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).

The "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890 (2009). It is "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). However, considering several Supreme Court cases, it is now truly incumbent on the sentencing court to "make an individualized assessment based on the facts presented" in each case. *Gall v. United States*, 128 S.Ct. 586,

6

602 (2007). District Courts "may not presume that the Guidelines range is reasonable." *Id*. at 597.

Because the District Court is in a uniquely "superior position to find facts and judge their import under § 3553(a)," the Appellate Courts must now review all sentences under an abuse-of-discretion standard, regardless of whether the sentence is inside or outside the Guidelines range. *Gall*, 128 S.Ct. at 597, 602. The Supreme Court has explicitly rejected the notion that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Id*. at 595. The Supreme Court also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. So long as sentences that differ from the Guidelines are justified, a sentencing court's decision stands unassailable on appeal. *See, e.g., United States v. Jiminez-Gutierrez*, 491 F.3d 923 (8th Cir. 2007)(affirming substantial downward departure that was justified on record, and noting that even where circuit courts disagree with the degree of a trial judge's departure, the discretion to make such decisions is within the sole province of the District Court); *United States v. Gonzalez-Alvorado*, 477 F.3d 648, 650 (8th Cir. 2007)(noting that a sentence that varies from the Guidelines range is reasonable so long as the judge offers appropriate justifications under §3553(a) factors).

After using the Guidelines to determine the initial benchmark and allowing the parties to argue their respective positions, the Court should then make an individualized assessment of the unique facts of the case based on the §3553(a) factors. *Gall*, 128 S.Ct. at 596-97. "After settling on the appropriate sentence, he must adequately explain the chosen

7

sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id*. at 597. Ultimately, this Court is charged with a duty to protect the public, as well as the civil rights of Mr. Farah, with its experience, its wisdom, and the discretion vested in it by the Constitution and Congress.

## B.  A Sentence Below the Recommended Guidelines is Appropriate.

In determining an appropriate sentence, the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. §3553(a). These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; the need to protect the public from further criminal conduct; the need to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

The PSR appropriately recommends a 2-level adjustment for Mr. Farah's minor role pursuant to USSG §3B1.2(b), comment. (n.3(C)). (PSR 35.) This 2-level reduction is appropriate because Mr. Farah was not involved in the planning of the crime, was not given details about the crime, played just a small role, received no compensation for his actions, and had nothing to gain for his participation. He did this because of his blind loyalty to his brother (Abdiaziz Farah) and friend (Abdimajid Nur) who are both

codefendants in this case. Additionally, Section 3553(a) factors support good reason for this court to impose a sentence below the guidelines.

**C. The Section 3553(a) factors justify a sentence of amount equal to the time Mr. Farah has already served in federal custody.**

Mr. Farah has no prior criminal record and has never even been issued a speeding ticket in his life. In other words, he has never had any contact with law enforcement until he was arrested in connection with this case. Mr. Farah did not organize this bribery attempt, was not privy to the planning of the bribery, and did not direct any others on what to do. Instead, Mr. Farah, to a fault, simply followed directions from his friend and his brother. Mr. Farah's loyalty to his older brother, Abdiaziz Farah, and his desire to help his friend, Abdimajid Nur, doomed him into getting involved in this case. Mr. Farah had absolutely nothing to gain for participating in this crime. He was not on trial in the Feeding our Future case and he had no interest in that case other than just as an observer.

To his demise, Mr. Farah foolishly and without much forethought, agreed to help his brother and friend. To his credit, Mr. Farah did not know the details of the bribery, and he did not have a good understanding of the criminal justice system. In other words, he did not know how much money or that any money was being used to bribe a juror until the day of the attempted bribery when codefendant Nur contacted him to video record a transaction. Mr. Farah did not know codefendant Ali or that she was involved in this crime until he showed up at a meeting with Nur in the Bushra Warehouse parking lot on June 2, 2024. (PSR 13.) At that time, codefendant Nur introduced Mr. Farah to codefendant Ali and directed Mr. Farah to drive Ali to Juror 52's house and record a

9

video of the delivery of the bribe money. *Id.*

Mr. Farah has been in custody at Sherburne County Jail since he was arrested in this case on June 25, 2024. (PSR, F.1.) As of the date of this writing, Mr. Farah has been in custody for 484 days, which is roughly 16 months. By the time of sentencing, the number will only be much higher. The PSR recommends a sentencing guideline range of 46 to 57 months for a total offense level 23 and criminal history category of I. (PSR 84.)

For a 24-year-old young man with no prior contact with law enforcement, who has lived at home with his mother and siblings, the time he has already served in federal custody is an extreme amount of time behind bars. Moreover, the time at Sherburne County Jail should be considered "hard time" because of the conditions the inmates are subjected to, including absolutely no exposure to the sun, fresh air, and frequent jail-wide lockdowns that force the inmates, including Mr. Farah, to stay in their 6 foot by 8 foot jail cells for 24 hours per day and many times for days on end. This is an extreme change of circumstances for a young man who was otherwise pretty sheltered in his life at home with his family.

The objectives of sentencing, such as to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, can certainly be met with a sentence of time served.

## CONCLUSION

For the reasons stated herein, Mr. Farah asks the court to impose a sentence of time served. Such a sentence is sufficient, but not greater than necessary to accomplish the goals of sentencing. Additionally, such a sentence would provide just punishment for the offense;

10

would act as a sufficient deterrent; and is consistent with the sentencing guidelines after considering in the §3553(a) factors.

Respectfully submitted,

DEVORE LAW OFFICE, P.A.

Dated: <u>October 23, 2025</u>          <u>s/Kevin W. DeVore</u>
Kevin W. DeVore, #267302
724 Bielenberg Drive, Suite 110
Woodbury, MN  55125
(651) 435-6500

*Attorney for Abdulkarim Shafii Farah*